UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ISRAEL PEREZ, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 19-cv-11444-ADB |
| KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,[1] | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

　　Plaintiff Israel Perez brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), challenging the final decision of the Commissioner of the Social Security Administration (the "SSA") denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). [ECF No. 1]. Currently before the Court are Mr. Perez's motion to reverse the Commissioner's decision, [ECF No. 20], and Defendant Kilolo Kijakazi's (the "Acting Commissioner") cross-motion for an order affirming the decision, [ECF No. 26]. For the reasons set forth below, Mr. Perez's motion is GRANTED, and the Acting Commissioner's motion is DENIED.

---

[1] Ms. Kijakazi is substituted for her predecessor, Andrew Saul. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I. BACKGROUND

### A. Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims

"The [SSA] is the federal agency charged with administering both the Social Security disability benefits program, which provides [DIB] for covered workers, and the [SSI] program, which provides assistance for the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Act provides that an individual shall be considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

B.     **Procedural Background**

Mr. Perez applied for DIB and SSI benefits on August 3, 2016. [R. 291–94 (DIB); R. 295–303 (SSI)].[2] In his application, Mr. Perez alleged that he became disabled in December 2014. [R. 291]. The SSA denied Mr. Perez's applications. [R. 81–110 (initial denial); R. 111–42 (denial upon reconsideration)]. Thereafter, Mr. Perez requested an administrative hearing, which took place before Administrative Law Judge Stephen Fulton ("ALJ Fulton") in October 2017. [R. 49–80]. Following the hearing, ALJ Fulton issued a written decision finding that Mr. Perez was not disabled. [R. 18–47]. Mr. Perez then sought review from the SSA Appeals Council (the "AC"), but the AC declined to review ALJ Fulton's decision. [R. 1–3]. Having exhausted his administrative remedies, Mr. Perez filed a complaint with this Court seeking to reverse the Commissioner's decision pursuant to section 205(g) of the Act. [ECF No. 1]. On April 29, 2021, Mr. Perez moved to reverse the Commissioner's decision, [ECF No. 20], and on August 3, 2021, the Acting Commissioner cross-moved for an order affirming that decision, [ECF No. 26].

C.     **Factual Background**

At the time of the hearing before ALJ Fulton, Mr. Perez was fifty-six years old. [R. 54]. He has held various jobs—including as a machine operator, a cleaner at a restaurant, and a housekeeper at a nursing home—and appears to have last worked in 2012. [R. 324]. He attended school through tenth grade in Puerto Rico, and he cannot speak or read English. [R. 71–72]. He has had issues with alcohol dependency in the past, and, at the time of the hearing, he was living at a residential alcohol treatment facility. [R. 63–64]. In addition to his

---

[2] References to pages in the Administrative Record, which was filed electronically at ECF No. 15, are cited as "[R. __ ]."

substance use problems, Mr. Perez alleges that he suffers from multiple physical and mental ailments.  See [ECF No. 20 at 3].

### D.      October 2017 Hearing

On October 31, 2017, ALJ Fulton conducted a hearing at which Mr. Perez, his counsel, and Vocational Expert James Cohen ("VE Cohen") appeared.[3]  [R. 49–80].

Mr. Perez testified first.[4]  [R. 51–72].  He began by describing his previous work as a machine operator and as a cleaner at a nursing home.  [R. 55–59].  When asked to list the medical conditions precluding him from working, Mr. Perez mentioned depression, issues with his right shoulder, arthritis, and pain.  [R. 59–60].  With respect to his depression, he testified that he sees both a counselor and a psychiatrist regularly.  [R. 61–62].  As for his substance use issues,[5] he testified that he had been sober for about a year and half and, to deal with his alcohol dependency, attended Alcoholics Anonymous meetings and received medication designed to help him stay sober.  [R. 62–64].  Mr. Perez further testified that he was undergoing physical therapy at Boston Medical Center for his shoulder, was receiving injections to minimize his pain, and was scheduled to undergo right shoulder surgery in January 2018.  [R. 64–66].  He also stated that his shoulder pain exacerbates his sleep problems.  [R. 65].  When his attorney asked him why his shoulder pain would prevent him from resuming his work as a cleaner, he testified that the pain would prevent him from lifting objects over his head, which he viewed as a necessary aspect of the job.  [Id.].  Additionally, Mr. Perez testified that, for the most part, he

---

[3] The hearing transcript lists the Vocational Expert as "Collin," see [R. 49], but ALJ Fulton's written decision and the VE's resume confirm that his last name is "Cohen," see [R. 24, 422].

[4] Mr. Perez testified via an interpreter.

[5] Although Mr. Perez did not mention substance use issues in response to ALJ Fulton's questions, his attorney elicited testimony on that topic.  [R. 62–63].

cannot complete day-to-day tasks like grocery shopping, cooking, laundry, and cleaning without help from his friends (and can complete other tasks, like bathing, only slowly and with significant difficulty). [R. 67–70].

Next, VE Cohen testified. [R. 72–78]. He began by characterizing Mr. Perez's past jobs based on the Dictionary of Occupational Titles ("DOT") as follows: machine feeder (DOT No. 699.56-010, unskilled, medium work, SVP 2); and housekeeper/house cleaner (DOT No. 323.687-016,[6] unskilled, light work, SVP 2).[7] [R. 73]. He was then asked whether a hypothetical individual could perform any of Mr. Perez's previous jobs if that individual were Mr. Perez's age, had his level of education, could perform work at "the light exertion level," could "understand and remember simple instructions[,] . . . . concentrate for two hour periods over an eight hour day on simple tasks[,] . . . . interact appropriately with co-workers and supervisors[,] and . . . adapt to changes in the work setting," but would need to "avoid climbing using a rope, ladder or scaffold [and] . . . reach[ing] overhead with the right upper extremity." [R. 73–74]. VE Cohen testified that such a person could work as a housekeeper.[8] [R. 74]. Next, ALJ Fulton asked VE Cohen about a hypothetical individual who was Mr. Perez's age, had his

---

[6] The parties seem to agree that VE Cohen incorrectly used DOT No. 323.687-016 instead of 323.687-014. See [ECF No. 20 at 14; ECF No. 27 at 18 n.4]. The Court finds this to be a harmless error.

[7] "SVP" stands for "specific vocational preparation." U.S. Dep't of Lab., Emp. & Training Admin., Dictionary of Occupational Titles App. C. Components of the Definition Trailer (1991). It is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Id. An SVP of 2 indicates that a typical worker will take up to one month to adequately prepare for the job. Id.

[8] Mr. Perez's attorney followed up on this hypothetical by asking whether an individual unable to speak or read English could work as a housekeeper. [R. 78]. VE Cohen testified that such an individual could. [Id.].

level of education, could "lift up to ten pounds[,] . . . . stand or walk for six hours over an eight hour day," would need to "avoid reach[ing] overhead with the right upper extremity[,] . . . . climbing using a rope, ladder or scaffold[,] . . . . [and] crawling," and would "require unscheduled breaks over an eight hour period, that could total two hours." [R. 74]. VE Cohen testified that such a person could not perform any of Mr. Perez's previous work (or any other job in the national or regional economy). [R. 74–75]. When asked by Mr. Perez's counsel about the amount of overhead reaching required in a housekeeping job, VE Cohen testified as follows: "Well, there certainly could be some but the majority of the work is done [INAUDIBLE] and below waist level. In terms of cleaning, I'm sure there could be some overhead. I would think it's more the less than occasional [sic]." [R. 75–76]. Then, Mr. Perez's counsel and VE Cohen discussed whether a complete inability to reach overhead would preclude employment as a housekeeper. [R. 76].

### E. The ALJ's Decision

On December 22, 2017, ALJ Fulton issued a decision finding that, under the five-step sequential evaluation process, Mr. Perez was not disabled under the Act. [R. 18–47]. At step one, ALJ Fulton determined that Mr. Perez had not engaged in substantial gainful activity since December 20, 2014, his alleged onset date. [R. 27]. At step two, he determined that Mr. Perez had the following "severe" impairments: "right shoulder tear of supraspinatus, infraspinatus, subscapularis, and long head biceps tendon with surgery scheduled 1/16/18; depression; attention deficit hyperactivity disorder ("ADHD"), and history of alcohol abuse." [Id.]. ALJ Fulton found that Mr. Perez's other alleged ailments—"obstructive sleep apnea, left non-displaced distal ulnar fracture, diabetes, bilateral pterygium, and obesity"—were "non severe." [R. 28]. Additionally, with respect to left shoulder pain, ALJ Fulton found that

>   the records shows [sic] that [Mr. Perez] reported left shoulder pain. Later notes indicate complaints of bilateral shoulder pain. However. [sic] The claimant has only sought treatment for the right shoulder. There has been no imaging of the left shoulder or evaluation by specialists. The record references left shoulder pain but the record does not indicate that the claimant has ever been diagnosed with any impairment involving the left shoulder. The evidence of record does not support a medically determinable diagnosis consistent with a left shoulder impairment. I find the left shoulder pain symptoms to be a non-medically determinable impairment.

[R. 28–29 (emphasis and citations omitted)].

At step three, he determined that Mr. Perez does not have an impairment, or combination of impairments, that equals a listed impairment. [R. 29]. In making this determination, ALJ Fulton considered listing 1.02 (major dysfunction of a joint) in appendix 1 to subpart P of part 404 of 20 C.F.R. [Id.]. He also considered whether Mr. Perez could qualify under "paragraph B," which requires that an individual's "mental impairments . . . result in at least one extreme or two marked limitations in a broad area of functioning,"[9] [id.], but found that Mr. Perez could not qualify because he had only mild and moderate limitations. [R. 29–30]. ALJ Fulton further found that Mr. Perez did not qualify based on the "paragraph C" criteria because the record did not establish that he had "a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." [R. 30]. Before considering step four of the sequential evaluation process, ALJ Fulton found the following with respect to Mr. Perez's residual functional capacity ("RFC"):

>   After careful consideration of the entire record, I find that [Mr. Perez] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should avoid climbing using a rope, ladder, or scaffold and avoid reaching overhead with the right upper extremity. Additionally, he could understand and remember simple instructions, could concentrate for 2-hour periods over an 8-hour day on simple tasks; could interact

---

[9] The four areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.01(B).

7

appropriately with coworkers and supervisors; and could adapt to changes in the work setting.

[R. 30–31]. At step four, ALJ Fulton found that Mr. Perez was capable of performing his past relevant work as a housekeeper. [R. 41]. Accordingly, ALJ Fulton concluded that Mr. Perez was not disabled under the Act. [Id.].

## II.     STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 205(g) of the Act, which provides that an individual may obtain judicial review of a final decision of the Commissioner by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). Under sentence four of section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is *de novo*. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." (citations omitted)).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means

8

only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (citations and internal quotation marks omitted).

**III.     DISCUSSION**

Mr. Perez makes multiple arguments in favor of reversal, which the Court addresses in turn.

### A.     Left Shoulder

Mr. Perez asserts that ALJ Fulton erred by ignoring the medically-documented issues with his left shoulder when fashioning his RFC.[10] [ECF No. 20 at 9]. In determining Mr. Perez's RFC, ALJ Fulton relied exclusively on the opinions of Drs. James Grim and John Jao, see [R. 39], who opined, among other things, that Mr. Perez had bilateral shoulder pain and was limited in his ability to reach overhead with both arms, see [R. 92 (noting Mr. Perez's "bilateral shoulder pain," "bilateral shoulder disease," and "limited" overhead reaching on both sides); R. 122 (noting Mr. Perez's "bilateral shoulder pain" and "bilateral shoulder disease" and that Mr. Perez could perform "activities occasionally on the L[eft] and never on the R[ight]")]. Despite affording their opinions "great weight" on most issues, ALJ Fulton discredited their opinions regarding Mr. Perez's left shoulder because, in his view, the "record reflects complaints of left shoulder pain and then bilateral pain, but no diagnosis of a left shoulder impairment." [R. 39]. Further, he found that "[t]here has been no treatment, evaluations, or imaging of the left shoulder detailing any deficits that would support the restrictions in reaching with the left upper extremity." [Id.]. As the Acting Commissioner concedes, [ECF No. 27 at 10], that finding was

---

[10] As noted above, the only shoulder-related limitation included in Mr. Perez's RFC was a limitation on "reaching overhead with the *right* upper extremity." [R. 31 (emphasis added)].

erroneous because there is ample evidence in the record demonstrating that Mr. Perez's left shoulder was treated, evaluated, and imaged, see, e.g., [R. 930 (noting that x-rays were "suggestive of possible bilateral rotator cuff tears"); R. 591 (noting physical therapy on both shoulders); R. 1027 (noting that Mr. Perez had received a "multiple steroid injection in bilateral shoulders"); R. 639 (noting "impingement bilaterally")]. In sum, ALJ Fulton overlooked documents in the record when discounting Drs. Grim's and Jao's opinions concerning Mr. Perez's left shoulder. Accordingly, his decision to reject those opinions in formulating Mr. Perez's RFC was not based on substantial evidence and therefore cannot stand.

Notwithstanding her admission that ALJ Fulton's "reasoning cannot stand," the Acting Commissioner argues that remand would be pointless in light of VE Cohen's testimony. [ECF No. 27 at 10]. Specifically, the Acting Commissioner maintains that even if ALJ Fulton had credited Drs. Grim's and Jao's opinions and included a limitation on overhead reaching with both arms in Mr. Perez's RFC, Mr. Perez would still be able to perform his past relevant work as a housekeeper, per VE Cohen's testimony. [Id.]. The Acting Commissioner is correct that remand is necessary only if the outcome below might change. See Ward, 211 F.3d at 656 ("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise." (citations omitted)); Linehan v. Berryhill, 286 F. Supp. 3d 257, 262 (D. Mass. 2017) (noting that remand is necessary only "[w]here application of the correct legal standard could lead to a different conclusion" (citing Ward, 211 F.3d at 656)). VE Cohen's testimony, however, is not as clear as she contends.[11] When asked about whether

---

[11] The relevant exchange was as follows:

> Q. For housekeeping, what is the rate of overhead reaching?

10

an individual with "no overhead reaching" could still work as a housekeeper, VE Cohen speculated that "it still could be done" but added that "[t]here would be a significant reduction in numbers." [R. 76]. He also testified that "lots of housekeeping jobs have cleaning jobs that are performed *basically* at the waist level and below." [Id. (emphasis added)]. Although the Acting Commissioner may well be correct that VE Cohen did (or meant to) testify that an individual unable to reach overhead with either arm would still be able to work as a housekeeper, given the lack of specificity regarding available jobs, VE Cohen's reference to a "significant reduction in numbers" without elaboration, and his use of the limiting phrase "basically" in his analysis, a remand is appropriate.[12] It is certainly possible that a housekeeping job could be done with no

---

> A. Well, there certainly could be some but the majority of the work is done [INAUDIBLE] and below waist level. In terms of cleaning, I'm sure there could be some overhead. I would think it's more the less than occasional [sic].
>
> Q. If the limit was no, the limit was no overhead reaching, would you still continue to say that it would be an applicable job as done by via the testimony and described via the DOT code?
>
> A. I would say it still could be done. There would be a significant reduction in numbers, that is how many jobs are performed nationally, so I would say that there's in my experience lots of housekeeping jobs have cleaning jobs that are performed basically at the waist level and below.

[R. 75–76].

[12] The Court notes that VE Cohen's testimony (or at least the transcription of that testimony that has been filed in this case) is unclear in other ways as well. First, because ALJ Fulton's questions to VE Cohen referenced a limitation on "reach[ing] overhead with the right upper extremity," [R. 73–74], and neither ALJ Fulton nor Mr. Perez's counsel ever explicitly brought up the prospect of a *bilateral* reaching limitation, it is unclear whether VE Cohen testified that a person who could not reach overhead with one arm could still work as a housekeeper or that a person who could not reach overhead with both arms could still work as a housekeeper. [R. 76]. Second, there is an inaudible portion of the transcript. [R. 75]. Third, given the preceding phrase "[t]here would be a significant reduction in numbers," it is not clear whether the "that" in VE Cohen's statement, "that is how many jobs are performed nationally," means "with overhead reaching" or "without overhead reaching."

overhead reaching, but on the record before it, the Court cannot determine with any confidence that a remand would amount to an "empty exercise." Ward, 211 F.3d at 656. Accordingly, the Commissioner's decision is REVERSED, and the case will be REMANDED for further proceedings consistent with this Order.

### B.  Subjective Symptoms and Medical Opinions

Mr. Perez also maintains that ALJ Fulton improperly discounted his subjective claims of pain, [ECF No. 20 at 10–12], and the opinions of Dr. Andrew Linsenmayer, a psychiatrist, and Juli Smith, a Licensed Clinical Social Worker, who co-authored a December 2016 report regarding Mr. Perez's mental health,[13] [id. at 8–9]; see [R. 687–89 (report)]. Because this case will be remanded, the Court declines to address Mr. Perez's arguments in any depth other than to note that it would be disinclined to remand based on either of these issues. That said, because the case is being remanded based on the left shoulder issue, the ALJ may also want to more specifically address Mr. Perez's subjective symptoms and/or the medical opinions of Dr. Linsenmayer and Ms. Smith (or any other health care providers), as well as account for the results of the shoulder surgery scheduled for January 2018 (and/or any other post-hearing developments). See Linhares v. Kijakazi, No. 20-cv-10899, 2021 WL 4459701, at *10 (D. Mass. Sept. 29, 2021) ("While the ALJ's credibility determination is entitled to deference when supported by objective evidence, where the action is being remanded to reconsider the [RFC] and exertional limitations, [claimant's] subjective complaints should be reconsidered as well." (citation omitted)).

---

[13] Dr. Linsenmayer also completed a "Mental Health Impairment Questionnaire" in June 2017. [R. 416–21].

### C. Incomplete Vocational Testimony

Mr. Perez argues that VE Cohen's testimony was vague and that ALJ Fulton erred by failing to elicit more specific and comprehensive testimony. [ECF No. 20 at 12–14]. Given the remand, there is no need for the Court to address this issue at this time.

## IV. CONCLUSION

For the reasons stated above, the Court finds that ALJ Fulton erred by rejecting medical opinions regarding Mr. Perez's left shoulder. Further, because it is not clear to the Court that ALJ Fulton's error was harmless, the case will be remanded. Thus, Mr. Perez's motion to reverse, [ECF No. 20], is GRANTED, and the Acting Commissioner's motion to affirm, [ECF No. 26], is DENIED. The Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings consistent with this Order. If warranted, the ALJ shall give Mr. Perez an opportunity for a hearing and take any further action necessary to complete the administrative record prior to resolving the issues discussed above and issuing a new decision.

**SO ORDERED.**

October 19, 2021 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE